**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 01 2009**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3020 |
| | ) | |
| Smith-Boughan, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SunTrust Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court on the Motion of Debtor/Defendant GOE Lima, LLC for Stay Pending Arbitration [Doc. # 23], Plaintiff's opposition [Doc. # 27] and Debtor's reply [Doc. # 31]. For the reasons that follow, Debtor's motion will be granted, and Plaintiff's claim against Debtor will be referred to arbitration.

## BACKGROUND

On or about November 17, 2006, Plaintiff entered into a contract with Debtor for Plaintiff to provide certain mechanical services in connection with construction of an ethanol facility on Debtor's property in Lima, Ohio ("Contract"). On the same day, Debtor and Plaintiff also entered into an agreement captioned "General Conditions of the Contract for Construction" ("General Conditions") and agreed that the Contract terms include the General Conditions. The General Conditions include an arbitration clause that provides in relevant part as follows:

> If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions the parties may endeavor to settle the dispute by mediation. . . .
> If a claim is not resolved through mediation, the sole remedy of any party to the mediation process shall be to make a written demand for binding arbitration. . . . Such arbitration shall be conducted by a panel of three arbitrators (with the Owner and the Contractor each selecting an arbitrator and the two selected arbitrators selecting the third), in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties agree otherwise. . . .
> . . . .
> The award entered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

[Doc. #1, Ex. B, §§ 4.6.2, 4.6.3.1, 4.6.3.4].

On October 14, 2008, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has since filed a proposed plan of reorganization. On January 30, 2009, Plaintiff commenced this adversary proceeding alleging, among other things, that Debtor breached the Contract and General Conditions and seeking a determination that it has a valid and allowed claim against Debtor in the amount of $4,562,214.28.[1] Debtor has filed a counterclaim against Plaintiff for breach of contract.

## LAW AND ANALYSIS

Debtor argues that the Federal Arbitration Act ("FAA") requires the court to enforce the parties' arbitration agreement by staying this proceeding pending the conclusion of arbitration. Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. §

---

[1] Plaintiff's complaint includes ten additional claims asserted against SunTrust Bank as an individual entity and as collateral and/or administrative agent for the prepetition secured lenders of Debtor.

2). To enforce this mandate, the FAA requires courts to stay a proceeding "upon being satisfied that the issue involved in such. . . proceeding is referable to arbitration under [a written] agreement . . . until such arbitration has been had in accordance with the terms of the agreement. . . " and provides authority for orders directing that such arbitration proceed when a party refuses to comply with the arbitration agreement. 9 U.S.C. §§ 3 and 4.[2]

The United States Supreme Court explained that the FAA "establishes a 'federal policy favoring arbitration'" and "requiring that 'we rigorously enforce agreements to arbitrate.'" *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal citations omitted). However, when the FAA's mandate conflicts with another federal statute, the mandate can be overridden if the party opposing arbitration can show "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 226-27. The Supreme Court explained that such an intent "will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227.

In *McMahon,* the Supreme Court addressed a purported conflict between the FAA and the Securities Exchange Act and the Racketeer Influenced and Corrupt Organization Act (RICO). Applying the above analysis, the Court concluded, first, that the text and legislative history of neither the Exchange Act nor RICO evince congressional intent to exclude claims from the FAA mandate. *Id.* at 238-39. It then found that enforcement of the arbitration agreements at issue would not effect a waiver of the substantive provisions of the Exchange Act as argued by the petitioners and that customers could effectively vindicate their RICO claim in an arbitral forum. *Id.* at 238, 242. Thus, the Court concluded that no inherent conflict was present and that both the Exchange Act and RICO claims must be resolved through arbitration. *Id.*

In this case, Plaintiff does not contend that the Bankruptcy Code or its legislative history evinces a congressional intent to preclude waiver of judicial remedies relating to claims asserted against a debtor. *See Whiting-Turner Contracting Co. v. Elec. Mach. Enter., Inc. (In re Elec. Mach. Enter., Inc.)*, 479 F.3d 791 (11th Cir. 2007) (finding "no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code"); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006) (same). Rather, it argues that because this is a core proceeding,

---

[2] There is no dispute that the issues involved in Plaintiff's claim against Debtor and Debtor's counterclaim, both which involve allegations of breach of the Contract and General Conditions, fall within the scope of the parties' arbitration agreement.

3

there is an inherent conflict between the FAA mandate and the Bankruptcy Code's policy of providing a centralized proceeding to facilitate the expeditious and inexpensive resolution of all matters relating to a particular bankruptcy case so that reorganization can proceed efficiently. *See Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352, 363 (Bankr. D. Mass. 2009); *Brown v. Mortgage Elec. Registration Sys., Inc. (In re Brown)*, 354 B.R. 591, 595 (D.R.I. 2006).

Although the Sixth Circuit has not addressed the *McMahon* analysis in the context of a bankruptcy case, five circuit courts have. *See Elec. Mach. Enter., Inc.*, 479 F.3d at 798-99; *MBNA Am. Bank v. Hill*, 436 F.3d 104 (2d Cir. 2006); *Mintze*, 434 F.3d at 229-232; *Phillips v. Mowbray, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164 (4th Cir. 2005); *Ins. Co. of North Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Company)*, 118 F.3d 1056 (5th Cir. 1997). Four of the five circuits have refused to find the existence of an inherent conflict based simply on the core/non-core nature of the issue involved. *See Elec. Mach. Enter., Inc.*, 479 F.3d at 796; *Hill*, 436 F.3d at 108; *Mintze*, 434 F.3d at 230; *Nat'l Gypsum Co.*, 118 F.3d at 1067. The Fifth Circuit explained:

> The core/non-core distinction conflates the inquiry set forth in *McMahon* . . . with the mere identification of the jurisdictional basis of a particular bankruptcy proceeding. Certainly not all core bankruptcy proceedings are premised on provisions of the Code that "inherently conflict" with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code. Although . . ."the core/non-core distinction is a practical and workable one," it is nonetheless too broad.

*Nat'l Gypsum Co.,* 118 F.3d at 1067 (internal citation omitted). Thus, the court agreed that merely because a court has the authority to make a full adjudication does not mean it should do so. *Id.* at 1068 (quoting *In re Statewide Realty Co.*, 159 B.R. 719, 724 (Bankr. D.N.J. 1993)); *see Elec. Mach. Enter., Inc.*, 479 F.3d at 796 (stating that "whether or not the bankruptcy court has jurisdiction, even exclusive jurisdiction, over a matter is a separate question from whether enforcing a valid arbitration agreement would pose an inherent conflict with the underlying purposes of the Bankruptcy Code"); *Cf McMahon*, 482 U.S. at 227-28 (finding that claims under § 10(b) of the Securities Exchange Act were subject to arbitration even though district courts have exclusive jurisdiction over such claims). Similarly, the Second Circuit explained that while bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters since such matters "implicate 'more pressing bankruptcy concerns,'" to exercise such discretion, a court must still find "that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the

4

objectives of the Bankruptcy Code." *Hill*, 436 F.3d at 108; *see Mintze*, 434 F.3d at 230 (refusing to rely on the core/non-core nature of the proceeding and instead distinguishing between causes of action derived from the debtor and Bankruptcy Code established claims).

Nevertheless, Plaintiff cites the Fourth Circuit's opinion in *White Mountain Mining Company* for the proposition that arbitration of core issues would frustrate the goal of bankruptcy to centralize decision making. In that case, the court stated that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *White Mountain Mining Co.*, 403 F.3d at 169. However, not every inconsistency results in the inherent conflict that must shown to defeat a valid arbitration agreement. Rather, a party opposing arbitration must show an "*irreconcilable* conflict between arbitration and [the statute's] underlying purpose" *McMahon*, 482 U.S. at 239 (emphasis added); *Hill*, 436 F.3d at 108 (stating that congressional intent to override the FAA's mandate may be found if there is a "severe conflict" between the objectives of the Bankruptcy Code and arbitration). Thus, notwithstanding the court's general statement regarding the inconsistency of arbitrating core issues, the Fourth Circuit considered the bankruptcy court's specific findings that enforcing an arbitration agreement requiring arbitration in London would substantially interfere with the debtor's efforts to reorganize and concluded that those findings confirmed that the London arbitration was inconsistent with the purpose of the bankruptcy laws to centralize disputes so that reorganization could proceed efficiently. *White Mountain Mining Co.*, 403 F.3d at 170.

In this case, Plaintiff's claim against Debtor and Debtor's counterclaim for breach of contract are core proceedings. *See* 28 U.S.C. § 157(b)(2)(B) (providing that core proceedings include the allowance or disallowance of claims against the estate and counterclaims by the estate against persons filing claims against the estate).[3] The breach of contract claims derive from the legal rights and obligations under the parties' prepetition Contract and General Conditions and not from rights created by the Bankruptcy Code. Resolution of the claims will not, therefore, implicate any matter central to the purposes and policies of the Bankruptcy Code. Debtor has filed a proposed plan of reorganization, and there has been no showing that arbitration would seriously interfere with Debtor's ability to reorganize. The only conflict between

---

[3] Although Plaintiff has not filed a proof of claim in Debtor's underlying bankruptcy case, no claims bar date has been set.

5

arbitration and the Bankruptcy Code that Plaintiff points to in this case relates to the Code's policy of centralizing disputes in order to allow reorganization to proceed efficiently. However, without a showing of any specific and substantial interference with Debtor's reorganization, Plaintiff has not met its burden under *McMahon* of showing an inherent conflict evidencing congressional intent to preclude a waiver of a judicial forum for the type of claim brought against Debtor. While arbitration deviates from the Bankruptcy Code's general policy of resolving all issues in a centralized forum, that factor alone is insufficient to find an inherent conflict. As one court observed, to conclude otherwise, "the exception would swallow the rule because that factor is present in every bankruptcy case," and "[t]here is no basis for finding that of all the federal statutes, the Bankruptcy Code alone stands immune from the Federal Arbitration Act." *Cohen v. Ernst & Young, LLP (In re Friedman's, Inc.)*, 372 B.R. 530, 544 (Bankr. S.D. Ga. 2007).

## **CONCLUSION**

Plaintiff having failed to meet its burden of showing congressional intent to preclude a waiver of a judicial forum for the type of claim asserted against Debtor, the court finds that it has no discretion to deny a motion to stay this proceeding pending arbitration. The court will enter a separate order granting Debtor's motion.