**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 01 2009**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3020 |
| | ) | |
| Smith-Boughan, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SunTrust Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### DENYING MOTION TO SEVER

This adversary proceeding is before the court on a motion to sever claims against Defendant SunTrust Bank ("the Bank") [Doc. # 26], Plaintiff's opposition [Doc. #34], and the Bank's reply. The Bank argues that Plaintiff's joinder of it as a defendant in this proceeding was improper under Rule 20(a) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Federal Rule of Bankruptcy

Procedure 7020. The Bank alternatively argues that severance of the claims asserted against it is appropriate under Rule 42(b) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7042. Having considered the motion and the briefs in support of the parties' respective positions, for the reasons that follow, the motion to sever will be denied.

## BACKGROUND

Debtor/Defendant GOE Lima, LLC, ("Debtor") operated an ethanol production facility in Lima, Ohio. It filed its Chapter 11 bankruptcy petition on October 14, 2008. Plaintiff commenced this adversary proceeding against the Bank, as an individual entity and as collateral and/or administrative agent for the prepetition secured lenders of Debtor, on January 30, 2009. In its complaint, Plaintiff alleges that, on or about November 17, 2006, it entered into a contract with Debtor for Plaintiff to provide certain mechanical services in connection with construction of the ethanol facility in Lima ("Contract"). [Doc. #1, Complaint ¶7, Ex. A]. Plaintiff and Debtor also entered into an agreement captioned "General Conditions of the Contract for Construction" ("General Conditions") and agreed that the Contract terms include the General Conditions. (collectively, "the Construction Contract") [*Id.* ¶ 8-9, Ex. B, § 1.1.1 - 1.1.2]. The Bank is not a party to either the Contract or the General Conditions. [*See id.*, Ex. A, p. 10 and Ex. B, p. 50].

The Contract required Debtor to make an initial payment to Plaintiff following execution of the Contract and thereafter make progress payments based upon applications for payment submitted by Plaintiff and calculated in accordance with a formula based upon the percentage of work completed, less a ten percent retainage until the work was fifty percent complete. [*Id.,* Ex. A, § 5.1 - 5.8]. After the work was fifty percent complete, progress payments were due with respect to the remaining fifty percent of the work without reduction for any additional retainage. [*Id.* at § 5.8]. The General Conditions provided that the retainage portion of the progress payments would be maintained in an interest bearing account at the Bank for the benefit of Debtor and Plaintiff ("the Retainage Account"), to be disbursed in accordance with terms set forth in the General Conditions. [*Id.*, Ex. B § 9.6.8]. Section 9.6.8 also sets forth the circumstances under which Debtor could draw down a portion of the retainage to compensate it for claims it has against Plaintiff under the Construction Contract and the manner in which disputes regarding such would be resolved. [*Id.*]. In addition, that section provides:

> Following Final Completion, all undisputed funds in the escrow account shall be promptly disbursed to [Plaintiff] together with all interest accrued thereon, and following resolution of all Claims of [Debtor] as provided in this Section 9.6.8, all funds remaining in the escrow account, together with all interest accrued thereon, shall be disbursed to [Debtor or Plaintiff]

2

as applicable, together with all interest accrued thereon.

Also on or about November 17, 2006, Debtor, Plaintiff, and the Bank entered into a Consent and Agreement ("Consent Agreement"). [*Id.* ¶ 10, Ex. C]. Pursuant to the Consent Agreement, Plaintiff consented to Debtor granting the Bank a security interest in the Construction Contract and acknowledged the Bank's "right, but not the obligation," to exercise all rights of Debtor in accordance with the Construction Contract. [*Id.* Ex. C, Recitals ¶ 8 and § 1.1].

In its complaint, Plaintiff alleges one claim (count one) against Debtor, wherein it asserts a claim for breach of the Construction Contract and requests a determination of the amount owed it by Debtor. Plaintiff claims that Debtor owes it $4,562,214.28 under the Construction Contract, which amount includes $836,491 of retainage funds deposited in the Retainage Account at the Bank. In addition, Plaintiff asserts ten counts against the Bank, nine of which relate to allegations that the Bank improperly used funds from the Retainage Account in order to offset a debt owed by Debtor to the Bank (counts two through five and counts seven through eleven) and one that seeks a declaration that the Bank did not have a security interest in the Retainage Account (count six). On August 24, 2009, the court entered an order granting the Bank's motion to dismiss counts 2, 3, 4 and 5 (breach of contract, breach of implied contract, breach of express trust, and breach of implied trust) and denying its motion to dismiss counts 6, 7, 8, 9, and 10 (request for declaratory judgment of invalidity of Bank's lien, breach of fiduciary duty, third party beneficiary claim, negligence, promissory estoppel, and unjust enrichment), as well as a conversion claim not set forth by name as a separate legal theory in the specific counts of the complaint. [*Cf.* Complaint ¶ 31("Bank wrongfully and willfully removed, took and converted all funds from the Escrow Account.")].

## LAW AND ANALYSIS

### I. Joinder of the Bank is proper under Rule 20(a)

Rule 20(a) provides in relevant part as follows:

(2) Defendants. Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The purpose of Rule 20(a) is to promote judicial economy and trial convenience.

3

*Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 230 (M.D. Tenn. 2001) (citing *Mosely v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir. 1974)). The Supreme Court has "strongly encouraged" joinder, stating that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

In order to properly join a defendant, both prongs of the test set forth in Rule 20(a)(2) must be met. *United States v. Katz*, 494 F. Supp. 2d 645, 648 (S.D. Ohio 2006). If the requirements for joinder of parties have been satisfied as to at least one claim against a party, under Rule 18 of the Federal Rules of Civil Procedure, the plaintiff may then join as many other claims as it has against that party. 7 Charles Alan Wright, et al., *Federal Practice & Procedure* Civ. 3d § 1655 (2001) (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982)).

The first prong of Rule 20(a)(2), the transactional relatedness test, requires the plaintiff to assert rights against the defendants "that arise from related activities–a transaction or an occurrence or a series thereof." *Bridgeport Music*, 202 F.R.D. at 231. As one court observed, "courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 811 (S.D. Ohio 2008) (citing 7 Charles Alan Wright, et al., *Federal Practice & Procedure* Civ. 3d § 1653 (2001)).

The Bank argues that Plaintiff's claim against Debtor and its claims against the Bank do not arise from the same transaction. According to the Bank, the alleged breach of contract by Debtor in failing to pay for work performed by Plaintiff under the Construction Contract is unrelated to claims against the Bank based upon the Bank's allegedly wrongful setoff from the Retainage Account. However, count six of Plaintiff's complaint also includes a claim against the Bank that seeks a declaration that the Bank did not have a security interest or lien on the funds in the Retainage Account because such funds did not constitute property of Debtor. The basis of this claim is Plaintiff's assertion that the retainage funds were the trust res of a trust of which it was the beneficiary, [*see* Complaint at ¶¶14, 17, 33, 60], since, under Ohio law, the equitable owner of a bank account is not subject to the debts of the legal owner, *Parker Motor Freight, Inc. v. Fifth Third Bank*, 116 F.3d 1137, 1141 (6th Cir. 1997). Thus, this claim requires proof, not only of the existence of a trust, but also that Plaintiff, rather than Debtor, was entitled to the retainage funds in accordance with the terms of the Construction Contract, which terms arguably set forth the parties' intent to create a trust for the benefit of Plaintiff *and* Debtor. Such proof necessarily entails a duplication of

4

testimony and evidence with that necessary to prove Plaintiff's breach of contract claim against Debtor. Plaintiff's declaratory action claim against the Bank, therefore, arises out of the same transaction, the Construction Contract, as its breach of contract claim against Debtor.

The second prong of the Rule 20(a)(2), the common question of law or fact requirement, is also met in this case. Both the breach of contract claim and the declaratory action claim pose the question of whether Plaintiff's performance under the Construction Contract entitles it to recovery and whether Debtor had any right the funds in the Retainage Account due to alleged breaches of the Construction Contract by Plaintiff.

As explained above, it is sufficient that one of Plaintiff's claims against the Bank meets the joinder standard of Rule 20. Under Rule 18 then, joinder of the remaining claims against the Bank is proper. *See* Fed. R. Civ. P. 18(a), Fed. R. Bankr. P. 7018. Nevertheless, Plaintiff's right to recovery on all of the claims against the Bank that survive the Bank's motion to dismiss are dependent upon Plaintiff proving that it had an equitable interest in the funds in the Retainage Account such that Plaintiff is entitled to those funds. Thus, common questions of law and fact also exist as to Plaintiff's claim against Debtor and all of the remaining claims against the Bank.

For the foregoing reasons, the court concludes that Plaintiff's joinder of the Bank as a defendant in this proceeding was proper under Rule 20.

## II. The court declines to exercise its discretion under Rule 42(b)

The Bank also argues that severance of the claims asserted against it is appropriate under Rule 42(b). Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); Fed. R. Bankr. P. 7042. The decision to order separate trials is a matter within the sound discretion of the trial judge and "is dependent on the facts and circumstances of each case." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). "Cases should be consolidated if the risks of prejudice and confusion are outweighed by other factors including 'the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources. . . .'" *Carpenter v. GAF Corp.*, 16 F.3d F3d 1218 (Table), 1994 WL 47781, *1 (6th Cir. Feb. 15, 1994) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)); *Kiser v. Bryant Elec. (In re Beverly Hills Fire Litig.)*, 695 F.2d 207, 216 (6th Cir. 1982) (explaining that a court ordering separate trials must consider issues such as potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy that would result).

5

The Bank argues that Plaintiff's claim against Debtor involves complex construction contract litigation while the legal and factual issues relating to claims based on the Bank's wrongful offset of the Retainage Account involve completely separate and different issues. It further argues that requiring separate trials will not prejudice Plaintiff since there will be no overlap in evidence, undue expense or delay. The court disagrees.

As discussed above, there are significant issues relating to Plaintiff's and Debtor's performance under the Construction Contract that must be decided and that factor heavily into a determination as to whether Plaintiff is entitled to recover on its claims against both Debtor and the Bank. The court has stayed this proceeding with respect to Plaintiff's breach of contract claims against Debtor pending arbitration in accordance with their Construction Contract. With respect to Plaintiff's claims against the Bank, to the extent that the Bank will assert a defense that Plaintiff had no equitable interest in the retainage funds due to Plaintiff's breach of the Construction Contract and/or Debtor's right under the Construction Contract to from funds in the Retainage Account, Debtor's assignment of the Construction Contract as set forth in the Consent Agreement provides the Bank with all of the rights of Debtor under the Construction Contract, including the right to demand arbitration of issues arising out of or relating to the Construction Contract. To the extent that the Bank chooses not to participate in arbitration, the Sixth Circuit has recognized the preclusive effect that federal courts ordinarily give to arbitration decisions. *See Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir. 1991). Under *Central Transport, Inc.*, and given its privity of contract with Debtor, it appears that an arbitration decision would bar the Bank from relitigating the contract issues in this court. *Id.* at 262 (finding that all elements required for collateral estoppel were met as to all defendants, notwithstanding the fact that two defendants did not participate in the arbitration proceeding); *Goodson v. McDonaough Power Equip., Inc.*, 2 Ohio St. 3d 193, syllabus ¶ 1, (1983) (holding that collateral estoppel bars a party, or a person in privity with him, from relitigating an issue determined in a prior action).

Requiring Plaintiff to litigate its claims against the Bank in a separate trial would result in Plaintiff having to present evidence and testimony regarding its performance and that of Debtor under the Construction Contract before both this court and the arbitration panel. As the Bank recognizes, the contract issues will involve "fact-intensive, complex construction litigation," [*see* Doc. # 26, Motion to Sever, p. 5], which the court believes would impose a tremendous burden on both Plaintiff and its witnesses if litigated in two separate forums. The Bank has not shown that arbitration of the contract issues would result in any

6

significant delay in resolving Plaintiff's claims against it. This proceeding has been held in abeyance pending the court's determination of the instant motion to sever, as well as the Bank's motion to dismiss and Debtor's motion for stay pending arbitration. Thus, a case management schedule has not yet been entered and discovery has not yet commenced. In any event, the court finds that prejudice from any delay that might ensue does not outweigh the burden that separate litigation of the contract issues would impose on Plaintiff and its witnesses. In addition, the risk of inconsistent adjudication of the contract issues and the significant judicial resources that would be necessary to separately determine issues that will also be decided in arbitration weigh heavily against severing the claims against the Bank for separate trial.

For these reasons, the court declines to exercise its discretion under Rule 42(b) and will deny Plaintiff's motion to sever. In light of the court's order staying this proceeding as to Plaintiff's breach of contract claim against Debtor, the court finds it appropriate to also stay this proceeding as to Plaintiff's claims against the Bank.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Motion of SunTrust Bank to Sever Misjoined Claims [Doc. #26] be, and hereby is, **DENIED.**