**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 19 2012**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3020 |
| | ) | |
| Smith-Boughan, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SunTrust Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### GRANTING MOTION TO INTERVENE

This adversary proceeding is before the court on a Motion to Intervene as an Interested Party filed by PEA (LIT), LLC ("PEA") [Doc. # 106], Plaintiff Smith-Boughan, Inc.'s opposition [Doc. # 112] and PEA's reply [Doc. 114]. The court held a hearing on the motion at which attorneys for PEA, for Smith-Boughan, Inc. ("Smith-Boughan"), and for SunTrust Bank all attended in person. An attorney for the Liquidating Trustee under Defendant /Debtor GOE Lima, LLC's confirmed Chapter 11 plan attended by telephone. Having considered the parties' briefs and the arguments of counsel, for the reasons that follow, PEA's motion will be granted.

**BACKGROUND**

Smith-Boughan commenced this adversary proceeding on January 30, 2009, naming as defendants SunTrust Bank and GOE Lima, LLC, the debtor in the underlying Chapter 11 case. In its complaint, it alleges eleven counts, only one of which is relevant to PEA's motion to intervene, that being a breach of contract claim against GOE Lima, LLC ("Debtor").[1] [*See* Doc. # 1, Complaint, Count I]. Smith-Boughan alleges that contract damages of over $4.5 million are owed to it by Debtor. The underlying basis of Smith-Boughan's claim is a contract that it entered into with Debtor for Smith-Boughan to provide certain mechanical services in connection with the construction of an ethanol facility on Debtor's property in Lima, Ohio ("Construction Contract"). [*Id.*, attached Ex. A]. The Construction Contract incorporates by reference an agreement captioned "General Conditions of the Contract for Construction ("General Conditions"). [*Id.,* attached Ex. B]. The General Conditions include certain provisions relating to mediation and arbitration of claims arising out of the Contract. [*See id.* at § 4.6].

On March 26, 2009, Debtor answered the complaint and asserted a counterclaim for damages in excess of $15 million that it allegedly sustained as a result of Smith-Boughan's breach of the Construction Contract. On that same date, Debtor filed a motion to stay this proceeding pending arbitration of the breach of contract claims. On September 1, 2009, over Smith-Boughan's objection, the court entered an order granting Debtor's motion and staying this proceeding as to Smith-Boughan's breach of contract claim. [Doc. # 38]. The parties then stipulated on October 13, 2009, and the court entered an agreed order on November 6, 2009, that both Smith-Boughan's claim against Debtor and Debtor's counterclaim against Smith-Boughan should be stayed pending arbitration to be conducted between Debtor and Smith-Boughan or until further order of the court.  [Doc. ## 53 & 54].

On May 5, 2010, the court entered an order in Debtor's underlying Chapter 11 case approving, as modified in that order,  a Settlement Agreement between, among others, PEA and Debtor. [Case No. 08-35508, Doc. # 653].  The Settlement Agreement, as modified,  was attached to, and incorporated by reference into, Debtor's First Amended Joint Plan of Liquidation ("Plan"), which was confirmed on July 8, 2010.  The Plan and Settlement Agreement provide that Debtor and the Liquidating Trust, created pursuant to the Plan, are deemed to have assigned to PEA on the Settlement Agreement effective date all of their rights, title and interest in the Construction Claims, which include Debtor's counterclaim in this proceeding. [*See id.*, Doc. 612, Plan ¶ 7.8(a) and (b), and attached Ex. 2, Settlement Agreement, p. 5, ¶¶ 4

---

[1] The remaining ten counts are claims against SunTrust Bank relating to allegations that the Bank improperly used "retainage" funds from a certain account at the Bank established by Debtor, funds to which Smith-Boughan alleges it is entitled.

& 5].  The Settlement Agreement effective date was September 16, 2010, which was also the effective date of the Plan. [*See id.*, Ex. 2, p. 4, ¶ 3;  Doc. # 739].

Notwithstanding the court's October 2009 order granting Debtor's motion to stay this proceeding pending arbitration, Debtor took no action to commence arbitration proceedings.  It was not until October 22, 2010, that an arbitration proceeding was commenced, but by PEA, not Debtor.   Although the parties to the Settlement Agreement, including PEA, acknowledged in the Agreement that the court has stayed this proceeding pending arbitration of Smith-Boughan's claims against Debtor as well as Debtor's counterclaims that were subsequently assigned to PEA, [*Id*. at 2, ¶ D], PEA has taken the position that Smith-Boughan's claim against Debtor cannot be heard in the arbitration proceeding that it has commenced.

On September 9, 2011, Smith-Boughan filed a motion seeking relief from the court's order staying this proceeding for the limited purpose of filing a motion requesting this court to determine whether the Construction Contract between Debtor and Smith-Boughan was properly transferred to PEA and, thus, whether an arbitration agreement exists under which PEA may pursue arbitration against it.  Debtor did not respond and, after a hearing at which there was no appearance by or on behalf of Debtor, the court granted the motion, subject to a threshold determination that, under the terms of the Construction Contract, the arbitrator(s) in the arbitration proceeding commenced by PEA does not have the power to decide these issues.  On October 7, 2011, Smith-Boughan filed its Motion to Determine Arbitrability, and on October 12, 2011, PEA filed the instant Motion to Intervene as an Interested Party.  Debtor has not responded to Smith-Boughan's Motion to Determine Arbitrability and did not appear at the November 2, 2011, hearing on that motion.

## LAW AND ANALYSIS

PEA seeks to intervene of right pursuant to Fed. R. Civ. P. 24(a)(2).  Under *Blount-Hill v. Ohio*, 636 F.3d 278, 283 (2011), an applicant must show that: (1) the application was timely filed; (2) the applicant possesses a substantial legal interest in the case; (3) the applicant's ability to protect its interest will be impaired without intervention; and (4) the existing parties will not adequately represent the applicant's interest.

Smith-Boughan does not contest the fact that elements two through four are satisfied.  There is no question that, as the assignee of the counterclaim asserted by Debtor, PEA has a substantial legal interest in the case and in the court's determination of Smith-Boughan's Motion to Determine Arbitrability.  In that motion, Smith-Boughan argues that the counterclaim was not properly assigned to PEA and that PEA, therefore, has no right to enforce the arbitration provision of the Construction Contract.  PEA's interest will

3

clearly be impaired to the extent that the court rules in favor of Smith-Boughan. No existing party will represent PEA's interest since, as a result of the assignment, Debtor has no interest in continuing to prosecute its counterclaim or in responding to issues relating to arbitrability of the counterclaim and has, in fact, demonstrated such lack of interest.

Nevertheless, Smith-Boughan argues that PEA's Motion to Intervene does not meet the threshold requirement of being timely filed. In *Blount-Hill*, the court set forth five factors to consider in determining the timeliness of an application for intervention of right: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

According to Smith-Boughan, the third through fifth factors militate against PEA's intervention. It argues that if PEA had intervened more than a year ago, its strategy of initiating arbitration that would not allow Smith-Boughan to pursue its claims against Debtor would have been addressed and may have resulted in the court modifying its decision to order the case stayed pending arbitration, which, in turn, would have allowed Smith-Boughan to avoid the expense incurred in the arbitration process.

However, this case was stayed on September 1, 2009. The court did not approve the Settlement Agreement, which identified PEA as the party entitled to pursue the Construction Claims against Smith-Boughan, until May 5, 2010 [Case No. 08-35508, Doc. # 653] and did not confirm the First Amended Joint Plan of Liquidation, which incorporated the Settlement Agreement, until July 8, 2010 [*Id.*, Doc. # 671]. The effective date of the Plan was September 16, 2010, and PEA filed its demand for arbitration with the AAA on October 22, 2010. Smith-Boughan did not raise an objection to the transfer of the Construction Claims until September 12, 2011, when it filed its motion to lift the stay in order to file a motion to determine arbitrability. Thus, the court finds that PEA's motion to intervene filed on October 12, 2011, was not untimely.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that PEA (LIT), LLC's Motion to Intervene as an Interested Party [Doc. # 106] be, and hereby is, **GRANTED.**