**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 7 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3020 |
| | ) | |
| Smith-Boughan, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SunTrust Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on Defendant SunTrust Bank's Motion for Summary Judgment ("Motion") [Doc. # 149], Smith-Boughan, Inc.'s opposition [Doc. # 154], and SunTrust Bank's Reply [Doc. # 155]. SunTrust Bank seeks dismissal of all claims against it, both individually and as agent for the senior secured lenders in the underlying Chapter 11 case ("SunTrust"), based upon the claim preclusive effect of an award in an arbitration proceeding between Smith-Boughan, Inc. ("Smith-Boughan") and PEA (LIT), LLC, ("PEA (LIT)"), the assignee of certain construction claims against Smith-Boughan. The court held a hearing on the Motion at which the parties addressed certain issues the court found relevant

to a determination of the Motion that had not been addressed in the parties' briefs, including the applicability of issue preclusion rather than claim preclusion principles.

Having considered the parties' respective briefs and arguments, for the reasons that follow, the court will deny SunTrust's Motion.

## PROCEDURAL/FACTUAL BACKGROUND

In support of its Motion, SunTrust relies on documents filed and orders entered in related proceedings that include the underlying Chapter 11 case of Debtor GOE Lima, LLC ("GOE"), this adversary proceeding, an adversary proceeding commenced by GOE against Smith-Boughan's surety, and an arbitration proceeding between Smith-Boughan and PEA (LIT).

Smith-Boughan commenced this adversary proceeding on January 30, 2009, by filing an eleven-count complaint and naming as defendants GOE, the debtor in the underlying Chapter 11 case, and SunTrust Bank, individually and as agent for GOE's prepetition secured lenders ("SunTrust"). [Doc. # 1, Complaint]. Count one of the complaint seeks a determination that Smith-Boughan has an allowed claim against GOE for approximately $4.5 million for breach of contract and wrongful termination of a contract that required Smith-Boughan to provide certain mechanical services in connection with the construction of an ethanol facility on GOE's property in Lima, Ohio ("Construction Contract"). [*Id.* at ¶¶ 39-42]. GOE answered and asserted a counterclaim against Smith-Boughan for $15 million for breach of the Construction Contract. [Doc. # 22, pp. 15-18].

The Construction Contract required GOE to make an initial payment to Smith-Boughan following its execution and thereafter make progress payments based upon applications for payment submitted by Smith-Boughan and calculated in accordance with a formula based upon the percentage of work completed, less a ten percent retainage, until the work was fifty percent complete. [Doc. # 1, Ex. A, § 5.1 - 5.8]. After the work was fifty percent complete, progress payments were due with respect to the remaining fifty percent of the work without reduction for any additional retainage. [*Id.* at § 5.8]. The General Conditions of the Contract for Construction ("General Conditions") provided that the retainage portion of the progress payments would be maintained in an interest bearing account at SunTrust for the benefit of GOE and Smith-Boughan ("the Retainage Account"), to be disbursed in accordance with terms set forth in the General Conditions. [*Id.*, Ex. B § 9.6.8]. The General Conditions also sets forth the circumstances under which Debtor could draw down a portion of the retainage to compensate it for claims it has against Plaintiff under the Construction Contract and the manner in which disputes regarding such would be resolved. [*Id.*].

Counts two through eleven of Smith-Boughan's complaint allege claims against SunTrust, four of

2

09-03020-maw    Doc 158    FILED 10/07/15    ENTERED 10/07/15 14:52:24    Page 2 of 13

which were previously dismissed.[1] The remaining counts include count six, seeking a declaratory judgment of invalidity of SunTrust's claimed security interest in the Retainage Account, and counts seven through eleven, which assert claims for damages in the amount of $836,491 under various alternative legal theories based upon SunTrust's alleged wrongful setoff of funds in the Retainage Account.[2] [*Id.*, ¶¶ 58-79].

GOE filed a motion to stay this proceeding pending arbitration in accordance with the arbitration agreement in the Construction Contract. On September 1, 2009, the court entered an order granting GOE's motion and staying this proceeding "with respect to Plaintiff's breach of contract claim against Debtor pending the conclusion of arbitration in accordance with the terms of the parties' agreement." [Doc. # 39]. On October 14, 2009, in accordance with a stipulation of Smith-Boughan and GOE, the court entered an agreed order staying both Smith-Boughan's claim against GOE and GOE's counterclaim against Smith-Boughan "until such time as an award is rendered in an arbitration to be conducted between GOE Lima, LLC and Smith-Boughan, Inc., or until further order of this Court terminating the stay of proceedings herein." [Doc. # 54].

On November 6, 2009, Smith-Boughan, SunTrust, and GOE stipulated, and the court ordered, that Smith-Boughan's claims against SunTrust also be stayed until "an award is rendered in an arbitration to be conducted between [Smith-Boughan] and [GOE], or until this Court has otherwise issued an order terminating the stay of proceedings herein, whichever is earlier." [Doc. # 60]. Prior to entry of the stipulation and order, the court had denied SunTrust's motion to sever Smith-Boughan's claims against it, finding that Smith-Boughan's joinder of SunTrust as a defendant was proper under Rule 20 of the Federal Rules of Civil Procedure. [*See* Doc. # 40]. The court explained that the basis of count 6 of the complaint seeking declaratory judgment that SunTrust did not have a security interest in the Retainage Account funds is that the retainage funds were the trust res of a trust of which Smith-Boughan was the beneficiary and, under Ohio law, the equitable owner of a bank account is not subject to the debts of the legal owner. [*Id.* at 4]. Because this claim would require proof, not only of the existence of a trust, but also that Smith-Boughan, not GOE, was entitled to the retainage funds in accordance with the terms of the Construction Contract, such proof would necessarily entail a duplication of testimony and evidence with that necessary

---

[1] In granting in part and denying in part a motion to dismiss filed by SunTrust, the court dismissed counts two through five, which alleged the following claims against SunTrust: breach of contract, breach of implied contract, breach of express trust, and breach of implied trust. [Doc. # 36].

[2] Counts seven through eleven specifically allege claims for breach of fiduciary duties by SunTrust, breach of duty to third-party beneficiary, negligence, promissory estoppel and unjust enrichment. [Doc. # 1, ¶¶ 62-79]. In addition, although not set forth by name as a separate legal theory in the specific counts of the complaint, the court recognized in its Order Regarding Motion to Dismiss that the complaint includes sufficient factual allegations to state a conversion claim. [Doc. # 36, pp. 15-16].

3

to prove Smith-Boughan's breach of contract claim against GOE. [*Id.* at 4-5]. The court concluded, therefore, that Smith-Boughan's declaratory action claim against SunTrust and its breach of contract claim against GOE arise out of the same transaction, the Construction Contract, and present common questions of law and fact, namely whether Smith-Boughan's performance under the Construction Contract entitles it to recovery and whether GOE had any right to the funds in the Retainage Account due to alleged breaches of the Construction Contract by Smith-Boughan.[3] [*Id.* at 5].

GOE also had commenced an adversary proceeding, naming Smith-Boughan's bonding company, Ohio Farmers Insurance Company ("OFIC"), as defendant and seeking damages for alleged breaches of the Construction Contract by Smith-Boughan. [Adv. No. 09-3204, hereafter referred to as the "GOE adversary proceeding"]. OFIC answered and filed a third-party complaint against Smith-Boughan. [*Id.*, Doc. # 10]. On October 13, 2009, in accordance with a stipulation by all of the parties, the court entered an order staying the proceeding against OFIC pending completion of arbitration proceedings between Smith-Boughan and GOE and, on October 1, 2012, the court entered an order requiring arbitration also of issues relating to conditions precedent to OFIC's liability under its performance bond. [*Id.*, Doc. ## 14, 96 & 97].

Meanwhile, in GOE's underlying bankruptcy case, pursuant to an Asset Purchase Agreement ("APA") between PEA Lima, LLC and GOE, and the February 18, 2009, order approving the APA, GOE sold substantially all of its assets to PEA Lima, LLC. [Case No. 08-35508, Doc. # 360 and attached APA]. However, certain of Debtor's claims were not acquired by PEA Lima, LLC, ("Remaining Assets"), including its claims against Smith-Boughan and Smith-Boughan's bonding company OFIC. Those claims were assigned to PEA (LIT) pursuant to a Settlement Agreement, as modified by the court's May 5, 2010, order approving the agreement, [*id.*, Doc. # 653], and pursuant to Debtor's First Amended Joint Plan of Liquidation ("Plan") and the court's July 8, 2010, order confirming Debtor's Plan [*id.*, Doc. # 671], both of which expressly incorporated the provisions of the Settlement Agreement, [*id.*, Doc. # 612, ¶ 1.51 & Doc. # 671, p. 13, ¶ 3].

The Plan provides for the creation of a liquidating trust ("Liquidating Trust") to which title to the Remaining Assets would be automatically vested upon the effective date of the Plan. [*Id.*, Doc. # 612, ¶¶ 7.3 & 7.4]. The Plan provides that as soon as practicable after its effective date, GOE would be dissolved for all purposes without the necessity for any other or further actions to be taken. . . ." [*Id.* at ¶ 11]. The

---

[3] The court also declined to exercise its discretion under Federal Rule of Civil Procedure 42(b) to sever the claims against SunTrust and require separate trials. [*See* Doc. # 40, p. 7].

4

Liquidating Trustee's duties under the Plan include objections to, and resolution of, all "Claims," which the Plan defines as "a claim against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code." [*Id.* at ¶¶ 1.15 & 8.2].

The Plan requires PEA (Lit) to pay to the Liquidating Trustee $150,000[4] and further provides that on the Settlement Agreement effective date, which was also the effective date of the Plan, "the Liquidating Trustee and the Debtor shall be deemed to have assigned to the PEA Assignee the Construction Claims and all of their rights, title and interest therein" and that "the PEA Assignee shall have standing to pursue the Construction Claims on its own behalf and on behalf of the Debtor, the Estate and the Liquidating Trust." [*Id.* at ¶ 7.8(b)]. Under the terms of the Plan, the Liquidating Trust retained an interest in a portion of the proceeds in the event of a favorable recovery on the Construction Claims. [*Id.* at ¶ 7.8(c)]. Specifically, the Liquidating Trust retained an interest in forty-five percent of the remaining proceeds recovered after PEA (Lit) is reimbursed the $150,000 it paid to the Trust plus interest, as well as its litigation expenses, and PEA (Lit) is to receive the remaining fifty-five percent of those proceeds.

The Plan defines "Construction Claims" to be as defined in paragraph D of the Settlement Agreement. [*Id.* at ¶ 1.23]. The Settlement Agreement, which was entered into by GOE, the Official Committee of Unsecured Creditors, PEA Lima and PEA (Lit), which is referred to in the Settlement Agreement as "Assignee," sets forth the "claims . . . and causes of action of the Debtor's estate against third parties" that were not purchased by PEA Lima. [*Id.*, Doc. # 610-1, ¶ D]. Included in the list of claims and causes of action not sold to PEA Lima are "Construction Claims," which the Settlement Agreement defines as "Claims *against* Smith-Boughan, Inc. . . and Smith-Boughan's bonding company Ohio Farmers Insurance Company and Gortech Global Fabrications LLC, and/or any of its affiliates. . . ." [*Id.* at 2, ¶ D (emphasis added)]. The Settlement Agreement explains:

> By way of counterclaim against Smith-Boughan, Inc. in Adversary Proceeding No. 09-03020 and complaint against Ohio Farmers Insurance Company in Adversary Proceeding No. 09-03204, the Debtor commenced its pursuit of the Construction Claims. The Bankruptcy Court has stayed the litigation of the claims and counterclaims asserted by Debtor, Smith-Boughan and Ohio Farmers Insurance Company in these adversary proceedings pending arbitration of these claims and counterclaims. For the avoidance of doubt, the term Construction Claims includes the claims and counterclaims asserted or to be asserted in the litigations or arbitrations involving Smith-Boughan, Ohio Farmers Insurance Company and Gortech as described in this paragraph, and the Claims purchased by PEAL [PEA Lima] shall be

---

[4] Pursuant to the terms of the Plan, this payment is designated the "Administrative Expense Payment." [Case No. 08-35508, Doc. # 612, ¶ 7.5].

5

referred to herein as the "PEAL Claims."[5]

[*Id.*]. Pursuant to the Settlement Agreement, on the effective date of the Plan, the Liquidating Trust would be the assignee and successor in interest "to all of the Debtor's rights, title and interest in the Remaining Assets (as defined in the Sale Order), including . . . the Construction Claims" and agreed that, on that date, "the Liquidating Trust and the Debtor shall be deemed to have assigned to the Assignee the Construction Claims and all of their rights, title and interest therein." [*Id.* at pp. 4-5, ¶¶ 3-5].

Notwithstanding the court's orders that had been entered prior to confirmation of the Plan staying this proceeding and the GOE adversary proceeding pending arbitration of the breach of contract claims of GOE and Smith-Boughan, neither GOE nor Smith-Boughan commenced an arbitration proceeding. Thus, after having been assigned Debtor's Construction Claims, PEA (Lit) commenced an arbitration proceeding on October 22, 2010, to address those claims. [*See* Doc. # 125, p. 3]. It ultimately sought and was granted intervention as an interested party in both this adversary proceeding and the GOE adversary proceeding. [*Id.* at 4; Adv. No. 09-3204, Doc. # 75].

After PEA (Lit) commenced the arbitration proceeding, Smith-Boughan was granted leave to, and did, file a Motion to Determine Arbitrability, wherein it sought a determination that PEA (Lit) may not pursue Debtor's counterclaims against it in arbitration. Smith-Boughan argued, among other things, that the dispute resolution provisions of the Construction Contract do not mandate arbitration. Smith-Boughan's stated motivation for filing its motion was PEA (Lit)'s position in the arbitration proceeding that Smith-Boughan's claim that GOE breached the Construction Contract could not be heard *in defense* of PEA(Lit)'s assigned breach of contract claim. At the hearing on the motion, Smith-Boughan made clear that it was not seeking a monetary judgment against PEA (Lit) in arbitration or otherwise. Relying on this and on the fact that an arbitrator had already determined that PEA (Lit)'s claim was subject to Smith-Boughan's "counterclaims, set-offs, and defenses," the court applied the law of the case doctrine to its earlier order staying this proceeding pending arbitration, finding no manifest injustice resulting from its earlier order. [*See* Doc. # 126, pp. 4-5].

As a preliminary matter in the arbitration proceeding, Smith-Boughan filed an Objection to Jurisdiction and Motion to Dismiss or Restructure Arbitration. It argued that, because GOE was not a party, the arbitration did not conform to this court's order and that GOE was a "critical party for the resolution of

---

[5] This statement explains how the Construction Claims were excluded from the sale of assets to PEA Lima under the APA, since the APA defines "Purchased Assets" to include "all claims and causes of action of [GOE] against Gortech and Smith-Boughan which are not being actively pursued by [GOE] or its successor in interest in a court proceeding commenced on or before the 180th day following Closing. . . ." [Case No. 08-35508, Doc. # 360, p. 2].

6

claims of all of the Respondents."[6]  [Pl. Ex. A, pp. 2-4].  Smith-Boughan requested that the arbitration be dismissed as contrary to the order of this court or, alternatively, to require PEA (Lit) to add GOE as a party or "obtain bankruptcy court authority to defend GOE Lima, LLC in this action and demonstrate [PEA (Lit)] has obtained authority to bind GOE Lima, LLC to the decisions of this proceeding as to counterclaims against GOE Lima, LLC." [*Id.* at 4].

In ruling on Smith-Boughan's requests, the arbitrator deciding preliminary matters stated, "PEA now owns the claims of GOE against [Smith-Boughan], but that leaves a question as to PEA's liability on claims of Smith-Boughan," noting that "[Smith-Boughan could assert its counterclaims as off-sets, but that does not provide Smith-Boughan rights to affirmative relief beyond the claims of PEA." [*Id.* at 22 and f.n. 3]. The arbitrator ruled that "[a]s assignee of GOE, with approval of the Court, [PEA (Lit)] has commenced arbitration in accordance with the contract between [Smith-Boughan] and GOE" and that "as current owner of the construction claims of GOE, [PEA (Lit)] is entitled to arbitrate those claims subject to the off-set or counterclaim which [Smith-Boughan] previously asserted against GOE." [*Id.* at 22].  The arbitrator stated that his decision "only covers jurisdiction and nothing contained herein shall be construed as a comment on the validity or invalidity of the claims and defenses of the parties." [*Id.*].

During the course of the arbitration proceeding, Smith-Boughan submitted a preliminary "Specification of Defenses," wherein it argued that "PEA's claims fail[]" for the following reasons:

1. GOE improperly terminated the Construction Contract
2. GOE prevented Smith-Boughan's performance under the Contract by repeatedly refusing and/or failing to timely provide complete and accurate design documents to Smith-Boughan
3. GOE's repeated breaches of the Contract excused Smith-Boughan's performance and operate to defeat PEA's claims
4. PEA's claimed delay damages and costs of completion are not recoverable against Smith-Boughan
5. PEA's claims are subject to set-off based on monies owed to Smith-Boughan by GOE under the Contract.

[SunTrust's Ex. 1, pp. 1-2].  Smith-Boughan specifically argued that "[e]ven if PEA were successful on part of its claim, any recovery by PEA must be reduced by the $10,558,406.88, plus interest, that GOE owes

---

[6] Respondents in the arbitration proceeding included not only Smith-Boughan but also Ohio Farmers Insurance Company, Gortech Global Fabrications LLC and Benchmark Design USA, Inc. [*See* Doc. # 134, Ex. A].

7

Smith-Boughan," which amount includes retainage funds in the amount of $836,491 ("Retainage Funds"). [*Id.* at 35]. In its pre-hearing brief, Smith-Boughan asserted the same arguments, adding that PEA failed to mitigate its damages and that the Construction Contract prohibited GOE from assigning its breach of contract claim to PEA. [*Id.*, Ex. 2, p. 1]. Finally, Smith-Boughan submitted a post-hearing brief wherein it reasserted the arguments set forth above, including that Smith-Boughan suffered damages due to GOE's multiple breaches but adjusted the amount it asserted was owed by GOE to $11,626,175.26. [*Id.*, Ex. 3, pp. 3-20]. Smith-Boughan requested that, for all of the reasons stated in its brief, the Panel "deny PEA's claims and award PEA nothing." [*Id.* at 20]. Smith-Boughan's briefs include no request for a monetary award against GOE or GOE's estate.

On January 21, 2014, the American Arbitration Association panel issued its Award of Arbitrators ("Arbitration Award"). The panel awarded PEA nothing on its claims against Smith-Boughan, finding that PEA "failed to prove Respondent Smith-Boughan defaulted on its performance under its contract with GOE Lima LLC, and/or was otherwise liable to Claimant for the damages it sought." [Doc. # 134, Ex. A, ¶ III]. The panel also awarded PEA nothing on its claim against OFIC, "for the reason that Smith-Boughan did not default on its performance and has no underlying liability owing to Claimant." [*Id.* at ¶ IV]. The Arbitration Award states that it "is and shall be a full and final resolution and settlement of all claims and counterclaims by any party to this arbitration. All claims, counterclaims, credits and setoffs not expressly granted are hereby denied." [*Id.* at ¶ VI]. On May 5, 2014, the court entered an order confirming and adopting the Arbitration Award. [Doc. # 145].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon

the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

## II. Preclusive Effect, if any, of the Arbitration Award

SunTrust moves for summary judgment as to all of Smith-Boughan's remaining claims against it. It bases its motion on the alleged res judicata effect of the Arbitration Award. Specifically, SunTrust argues that for Smith-Boughan to prevail on the remaining claims against SunTrust, it must prove that it has an allowed claim against GOE's estate and that GOE did not have a right to the funds in the Retainage Account at the time of the setoff by SunTrust. According to SunTrust, pursuant to the Arbitration Award, the panel conclusively determined that Smith-Boughan does not have a valid claim against GOE's estate, thus precluding Smith-Boughan's assertion of such a claim in this proceeding. SunTrust argues then that Smith-Boughan's remaining claims against it, all of which are based upon SunTrust's setoff of funds in the Retainage Account, necessarily fail as a matter of law since Smith-Boughan is precluded from asserting that it has a valid claim to those funds.

"[F]ederal courts ordinarily give preclusive effect to arbitrations." *Central Transport, Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 259 (6th Cir. 1991). However, the court notes that the remaining claims on which SunTrust seeks summary judgment include a declaratory judgment claim seeking a determination that SunTrust's security interest in the Retainage Account is invalid and five additional claims for damages under alternative legal theories, all of which are based upon SunTrust's alleged wrongful setoff of funds in the Retainage Account. While SunTrust advances a res judicata or claim preclusion analysis in support of its Motion, that Smith-Boughan has a claim against GOE's estate for the amount of the funds in the Retainage Account is only one element of each of Smith-Boughan's claims against SunTrust. [*See* Doc. # 36, Order Regarding Motion to Dismiss, pp. 10-16 (discussing elements that must be shown as to each of the remaining claims against SunTrust)]. The court thus applies an issue preclusion or collateral estoppel analysis, rather than a claim preclusion analysis, in determining SunTrust's Motion. After recognizing that the exact requirements necessary to invoke collateral estoppel are stated slightly differently in its various opinions, the Sixth Circuit identified the following elements that must be shown for a party to invoke issue preclusion under federal law:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation,
> (2) the issue was actually litigated and decided in the prior action,
> (3) the resolution of the issue was necessary and essential to a judgment on the merits in the

prior litigation,
(4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and
(5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry,* 412 F.3d 707, 716 (6th Cir. 2005). Although as one court noted, the issue of whether federal or state law governs the preclusive effect of an arbitration award is not well developed, *U.S. ex rel. Frontier Const., Inc. v. Tri-State Mgmt. Co.*, 262 F. Supp. 2d 893, 895 (N.D. Ill. 2003), in this case, regardless of whether federal or state law applies, the result is the same. Under Ohio law, the same elements as set forth in *Wolfe* must be shown to invoke issue preclusion. *See Cianciola v. Johnson's Island Prop. Owner's Assn.,* 981 N.E.2d 311, 315 (Ohio App. 2012). The party seeking to invoke issue preclusion bears the burden of proving that the necessary elements have been satisfied. *Asahi Glass Co. v. Toledo Eng'g Co.*, 505 F. Supp. 2d 423, 431 (N.D. Ohio 2007).

There is no dispute that Smith-Boughan was a party to the arbitration proceeding. And the briefs Smith-Boughan filed in the arbitration proceeding indicate that the issue of monies allegedly owed to Smith-Boughan by GOE, including the Retainage Funds that are at issue in each of its claims against Sun Trust, was actually litigated in that proceeding, albeit only in the context of a setoff in the event PEA (Lit) was successful on any part of its claim. However, as discussed below, Sun Trust has failed to show that the arbitration panel actually decided the Retainage Funds issue.

Sun Trust's position that the arbitration panel determined the merits of Smith-Boughan's claims against GOE is based essentially upon two arguments. First, Sun Trust argues that PEA (Lit) acquired all rights and responsibilities of GOE's estate with respect to the Construction Claims, including the claims by and against Smith-Boughan, and, as such, that PEA (Lit) represented GOE's estate, or perhaps more accurately, the Liquidating Trust, in the arbitration proceeding. Second, Sun Trust argues that the arbitration panel awarded Smith-Boughan nothing on its claims against GOE, relying on the final sentence of the Arbitration Award, which states that "[a]ll claims, counterclaims, credits and setoffs not expressly granted are hereby denied." [Doc. # 134, Ex. A, ¶ VI]. These arguments are flawed in several respects.

In support of its argument that PEA (Lit) represented not only itself but also GOE's estate with respect to Smith-Boughan's claim in the arbitration proceeding, Sun Trust relies on specific provisions of the Settlement Agreement, Plan and Confirmation Order and argues that pursuant to those provisions, the entity responsible for defending Smith-Boughan's claim against GOE's estate was PEA (Lit). It contends that is so because GOE, GOE's estate, and the Liquidating Trust assigned the Construction Claims to PEA (Lit) and, according to Sun Trust, the term "Construction Claims" includes both the estate's claims against

10

Smith-Boughan and Smith-Boughan's claims against GOE's estate, relying on the statement in the Settlement Agreement that "the term Construction Claims includes the claims and counterclaims asserted or to be asserted in the litigations or arbitrations involving Smith-Boughan . . . ." [Case No. 08-35508, Doc. # 610, Ex. A, ¶ D]. Sun Trust argues that the assignment of Smith-Boughan's claims against GOE's estate effected a transfer of the responsibility to defend the estate against those claims.

There is no dispute that the Construction Claims were assigned to PEA (Lit). The Settlement Agreement and the Plan clearly provide that PEA (Lit) was to pay the Liquidating Trustee $150,000 and GOE's estate and the Liquidating Trust were deemed to have assigned the Construction Claims to PEA (Lit). However, Sun Trust misconstrues the definition of "Construction Claims" to include Smith-Boughan's claims against GOE. Paragraph D of the Settlement Agreement defines "Construction Claims" to mean claims *against* Smith-Boughan, its bonding company, and Gortech Global Fabrication LLC, and this definition is expressly incorporated by the Plan. Smith-Boughan's claims against GOE are, quite properly, not included in that definition. The statement in that same paragraph of the Settlement Agreement that Sun Trust relies upon is taken out of context.

Paragraph D of the Settlement Agreement initially states that, with certain exceptions, PEA Lima has purchased and owns all claims and causes of action of GOE's estate *against* third parties. It then lists the excepted claims, including claims against Smith-Boughan, its bonding company, and Gortech Global Fabrication LLC, which it defines as the "Construction Claims." Pursuant to the APA, the assets purchased by PEA Lima included all claims against Smith-Boughan that were not being actively pursued in a court proceeding by a certain date. The statement in paragraph D following the definition simply clarifies that, although the litigation of both GOE's claim against Smith-Boughan in the GOE adversary proceeding and the counterclaim asserted by GOE against Smith-Boughan in this proceeding were stayed pending arbitration, the term "Construction Claims" includes those claims and counterclaims. *See* fn. 4.

Sun Trust also points to paragraph 17(b) of the Confirmation Order as recognizing PEA (Lit)'s obligation to defend the estate with respect to Smith-Boughan's claims. However, that subparagraph, entitled "Reservation of Rights," simply provides that, unless otherwise provided, nothing in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any "Claim, Cause of Action . . . right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date against or with respect to any Claim left unimpaired by the Plan." [*Id.*, Doc. # 671, p. 23-24, ¶ 17(b)]. It thus provides that "[t]he Liquidating Trust or Liquidating Trustee (and [PEA (Lit)] with respect to the Construction Claims), as the case may be, . . . shall be entitled to assert all such Claims . . . rights of setoff,

or other legal or equitable defenses which the Debtor . . . had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been filed. . . ." *Id.* This language clearly recognizes PEA (Lit)'s right to pursue what was formerly GOE's claim *against* Smith-Boughan and to defend that claim, which, pursuant to the Plan, belonged to PEA (Lit). While it may be true that PEA (Lit) represented the interest of GOE's estate to the extent that the estate had a forty-five percent interest in any recovery on the Construction Claims assigned to PEA (Lit), nothing in paragraph D assigns PEA (Lit) the duty to represent GOE's estate with respect to Smith-Boughan's affirmative claim against the estate. Paragraph 17(b) simply made clear that PEA (Lit) was entitled to defend its own claim. That PEA (Lit) represented its own interests and did not represent GOE's estate is made abundantly clear by the fact that it merely intervened in this adversary proceeding and the GOE adversary as an interested party, and did not seek substitution as a party in those proceedings.

To the extent that Sun Trust relies on this court's prior order denying Smith-Boughan's motion to determine arbitrability, its reliance is misplaced. As discussed earlier, in that motion, Smith-Boughan sought a determination that PEA (Lit) could not pursue GOE's counterclaims against it in arbitration, arguing that the provisions of the Construction Contract do not mandate arbitration and that GOE's claims were not validly assigned. The court found the invalid assignment argument barred by the res judicata effect of its Confirmation Order. It also found that its prior order staying this proceeding pending arbitration, which implicitly determined that the Construction Contract mandates arbitration, was law of the case as Smith-Boughan had failed to present its argument in objecting to GOE's motion to stay. The court also noted that Smith-Boughan's stated motivation for filing the motion was PEA (Lit)'s position in the arbitration proceeding that Smith-Boughan's claim that GOE breached the Construction Contract could not be heard *in defense of* PEA (Lit)'s breach of contract claim. Because an arbitrator had recently determined that PEA (Lit)'s claims were subject to Smith-Boughan's counterclaims, set-offs, and defenses, and relying on Smith-Boughan's representation that it was not seeking a monetary judgment against PEA (Lit) in the arbitration proceeding, the court found no manifest injustice resulting from its earlier order. While the court found PEA (Lit) was entitled to arbitrate its claim, the issue of whether PEA (Lit) also represented GOE's estate in the arbitration proceeding was not presented to, or addressed by, the court.

To the extent that Sun Trust relies on the final statement in the Arbitration Award that "[a]ll claims, counterclaims, credits and setoffs not expressly granted are hereby denied," as proof that the arbitration panel determined the merits of Smith-Boughan's claims against GOE and awarded it nothing, the court disagrees and finds such to be an unreasonable interpretation of the Award. The evidence Sun Trust offers

12

in support of its position, namely, the briefs filed by Smith-Boughan in the arbitration proceeding, clearly show that Smith-Boughan's claim was presented only as a set-off in the event PEA (Lit) was successful on any part of its claim. There is no dispute that PEA (Lit) was not otherwise liable on Smith-Boughan's claims against GOE's estate. Having determined that Smith-Boughan did not default on its performance under the Construction Contract and had no liability owing to PEA (Lit), the arbitration panel awarded PEA (Lit) nothing. It thus had no reason to even consider Smith-Boughan's set-off claim. As discussed above, PEA (Lit) did not represent GOE's estate in the arbitration proceeding. And no representative of GOE's estate or the Liquidating Trust was a party to the arbitration. Thus, to the extent that the final general statement in the Arbitration Award addresses Smith-Boughan's claim for setoff, which is the only claim it presented to the panel, the court finds that the only reasonable interpretation is that the claim was denied as moot.

As Sun Trust has failed to show that the arbitration panel actually determined Smith-Boughan's claims against GOE's estate, the court concludes that the Arbitration Award does not preclude Smith-Boughan's assertion that it has such claims, and, specifically, its claimed entitlement to the Retainage Account funds. Accordingly, Sun Trust's motion for summary judgment will be denied.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Sun Trust Bank's Motion for Summary Judgment [Doc. # 149] be, and hereby is, **DENIED**.