**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 25 2016**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3020 |
| | ) | |
| Smith-Boughan, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SunTrust Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND NOTICE OF THE COURT'S
DETERMINATION OF SUBJECT MATTER JURISDICTION**

This adversary proceeding is before the court after a hearing at which the court heard oral argument on the court's subject matter jurisdiction to address Plaintiff Smith-Boughan, Inc.'s claims against Defendant SunTrust Bank, individually and as agent for the pre-petition lenders (collectively, "the Bank"). Subject matter jurisdiction is a threshold matter that the court must decide before determining the merits of

a claim. Thus, prior to oral argument and pursuant to the court's Fifth Adversary Proceeding Scheduling Order, Smith-Boughan filed a Memorandum in Support of Jurisdiction [Doc. # 170]. In response, the Bank, both individually and as agent for the pre-petition lenders, filed a document stating that it consents to the court's jurisdiction and full adjudication of the claims against it in this proceeding [Doc. # 171]. Following oral argument, the parties filed supplemental memoranda to further address jurisdictional issues. [Doc. ## 180 & 181]. Having considered the briefs and arguments of counsel, the court concludes that it has "related to" jurisdiction to decide the claims pending against the Bank and authority to finally adjudicate those claims.

## BACKGROUND

The procedural history and factual background of this proceeding and the underlying bankruptcy case has been set forth at length in several earlier opinions entered in this proceeding. The following is a brief summary relevant to the court's jurisdictional determination.

Debtor GOE Lima, LLC, filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on October 14, 2008. Smith-Boughan is a creditor in the underlying Chapter 11 bankruptcy case, having asserted a claim against Debtor for breach of a construction contract in connection with the ethanol production facility that was operated by Debtor. The Bank was a lender to Debtor pursuant to a certain prepetition Credit Agreement ("Credit Agreement") and has filed secured claims against Debtor on its own behalf and as agent of the prepetition lenders.

On January 30, 2009, Smith-Boughan commenced this adversary proceeding against Debtor and the Bank. In count one of the complaint, Smith-Boughan sought a determination that it has a valid and allowed claim against Debtor for breach of the construction contract. Debtor answered and asserted a counterclaim against Smith-Boughan for $15 million for breach of the construction contract. This proceeding was stayed to permit arbitration of the breach of construction contract claims, which, on January 21, 2014, resulted in the arbitration panel finding that Smith-Boughan did not default on its performance under the construction contract. [Doc. # 134, Ex. A. ¶ IV]. On January 19, 2016, the court entered a stipulated order in the underlying bankruptcy case allowing Smith-Boughan's unsecured non-priority claim [Case No. 08-35508, Doc. # 1000], and Debtor was subsequently dismissed from this adversary proceeding on January 29, 2016 [Doc. # 173].

The remaining claims in the complaint are claims asserted against the Bank, all relating to the Bank's prepetition removal of retainage funds held by Debtor in an account at SunTrust Bank to pay down debt owed to it by Debtor. According to Smith-Boughan, the retainage funds belong to it as they relate to work

2

that it contends was previously completed, billed to and approved by Debtor. According to the Bank, it was entitled to the funds as it had a security interest in the account pursuant to the Credit Agreement.

On August 24, 2009, the court granted in part and denied in part the Bank's motion to dismiss. There are now seven remaining claims pending against the Bank: request for declaratory judgment that the Bank's security interest in the "retainage" account is invalid (Count Six), and claims for damages for breach of fiduciary duties of the Bank (Count Seven), third-party beneficiary claim (Count Eight), negligence (Count Nine), promissory estoppel (Count Ten), unjust enrichment (Count Eleven), and conversion, which the court recognized is set forth in the substance of the factual allegations in the complaint. [Doc. # 36, pp. 15-16].

The parties both assert that the court has subject matter jurisdiction to address the pending claims, relying at least in part on the following indemnification provision in the Credit Agreement:

> The Borrower shall indemnify [the Bank] . . . and hold [it] harmless from, any and all losses, claims, damages, liabilities and related expenses . . . incurred by [the Bank] or asserted against [the Bank] by any third party . . . arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, . . . or (iv) any actual or prospective claim, litigation, investigation or proceeding arising out of any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party . . ., provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee. . . .

[Doc. # 181-1, Ex. A, § 10.3(b)]. "Loan Documents" is defined in the Credit Agreement to include, among other things, "the Security Documents." [*Id.* at 24].

## LAW AND ANALYSIS

Federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court has referred this jurisdiction to the bankruptcy court. *See* 28 U.S.C. § 157(a); General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Both Smith-Boughan and the Bank assert that Smith-Boughan's claims against the Bank are "related to" the underlying bankruptcy case.

In determining "related to" jurisdiction, the Sixth Circuit Court of Appeals has adopted the following test first articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984):

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the

3

outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." A proceeding "need not necessarily be against the debtor or against the debtor's property" to satisfy the requirements for "related to" jurisdiction. However, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]." (stating also that "[j]udicial economy itself does not justify federal jurisdiction"). Instead, "there must be some nexus between the 'related' civil proceeding and the title 11 case."

*Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.)* (hereinafter "*In re Dow Corning*"), 86 F.3d 482, 489 (6th Cir. 1996) (emphasis added) (quoting *Pacor, Inc.*, 743 F.2d at 994). "Proceedings 'related to' a bankruptcy proceeding include 'suits between third parties which have an effect on the bankruptcy estate.'" *Id.* at 490 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 309, n.5 (1995)).

The Sixth Circuit Court of Appeals has more recently emphasized that the "'conceivable impact' of a claim on a bankruptcy estate, rather than its allowability as a claim on the estate's assets, is the touchstone of "related to" jurisdiction." *City of Chandler v. Hosch (In re Nat'l Century Fin. Enters., Inc. Inv. Litig.)*, 497 Fed. Appx. 491, 499 (6th Cir. 2012). The court's "related to" jurisdiction, and thus conceivability, depends upon the state of things at the time the proceeding is commenced. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) ("Conceivability is determined at the time a lawsuit is filed."); *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) ("[J]urisdiction of the Court depends upon the state of things at the time of the action brought.")).

Applying the above standards, the court agrees that "related to" jurisdiction exists as to all of the pending claims against the Bank. At the time this proceeding was commenced, the outcome of each of those claims could have conceivably affected Debtor's rights and liabilities in the underlying bankruptcy case. To the extent that Smith-Boughan prevails on its request for declaratory judgment that the Bank's security interest in the "retainage" account is invalid (Count Six), Debtor's liabilities would increase as the Bank's claim against the bankruptcy estate would be amended to include the amount of the funds from that account that were previously applied by the Bank to the amount owed to it by Debtor.

All of the remaining claims arise out of the Bank's prepetition removal of the retainage funds held

4

by Debtor in an account at SunTrust Bank pursuant to its purported security interest in that account. All of those claims potentially fall under the indemnification provision of the Credit Agreement as they each arise out of the Bank's performance under the Credit Agreement and Loan Documents, which includes the Security Documents. While it is conceivable that indemnification would not be available as to some or all of those claims to the extent that Smith-Boughan proves that the Bank's relevant conduct constitutes willful misconduct or gross negligence, neither willful misconduct nor gross negligence are elements necessary to prove any of those claims. *See FV1 Inc. v. Goodspeed*, 2012-Ohio-3001, ¶ 32, 974 N.E.2d 664, 671(2012) (breach of fiduciary duty); *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Oho St. 3d 36, 40 (1988) (third-party beneficiary claim); *Lagowski v. Shelly & Sands, Inc.*, 2015-Ohio-2685, ¶ 7, 38 N.E.3d 456, 458 (2015) (negligence); *Pappas v. Ippolito*, 177 Ohio App. 3d 625, 641 (2008) (promissory estoppel); *Maverick Oil & Gas, Inc. v. Barberton City School Dist.,* 171 Ohio App. 3d 605, 615 (2007) (unjust enrichment); *Dice v. White Family Cos.*, 2007-Ohio-5755, ¶ 17, 173 Ohio App. 3d 472, 477 (2007) (conversion). It is therefore also conceivable that the claims will not be excluded from the indemnification provision of the Credit Agreement. At the time Smith-Boughan commenced this adversary proceeding, the potential for Debtor being held liable to the Bank for indemnification was sufficient to establish a conceivable impact on the bankruptcy estate and, thus, "related to" jurisdiction. *See In re Dow Corning*, 86 F.3d at 494 (finding that it is not necessary for the claimant to first prevail on the indemnification claim and that "related to" jurisdiction existed since "[c]laims for indemnification and contribution . . . obviously would affect the size of the [bankruptcy] estate. . . ."); *see also City of Chandler v. Hosch,* 497 Fed. Appx. at 499 (rejecting arguments regarding the negligible impact of the indemnification claims on the bankruptcy estate and the allowability of those claims and stating that "the 'conceivable impact' of a claim on a bankruptcy estate, rather than its allowability as a claim on the estate's assets, is the touchstone of 'related to' jurisdiction").

Furthermore, to the extent that the pending claims against the Bank constitute claims for which, under *Stern v. Marshall*, 564 U.S. 462 (2011), the court lacks constitutional authority to address, the parties have both consented to final adjudication of the claims by this court. *See Wellness Int'l Network, Ltd. v. Sharif*, – U.S.–, 135 S. Ct. 1932, 1944-45 (2015).

## **CONCLUSION**

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) to address Smith-Boughan's pending claims against the Bank as each of the claims are "related to" the underlying bankruptcy case. And to the extent that the court lacks constitutional authority to address the pending claims, the parties have consented to final adjudication by the court.

###